UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. YASSER AHMED ELSEWEIFI, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>CEDARS BUSINESS SERVICES, LLC )<br>d/b/a CEDAR FINANCIAL, )<br>)<br>DEFENDANT. ) | Civil Action No._____ |

## COMPLAINT

Plaintiff, Dr. Yasser Ahmed Elseweifi brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant Cedars Business Services, LLC, d/b/a Cedar Financial. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") against the Defendant.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331, as Defendant does business in the State of Illinois.

2. Venue in this District is proper because Defendant's collection demands were received here, and Defendant transacts business here.

## PARTIES

3. Plaintiff, Dr. Yasser Ahmed Elseweifi, ("Plaintiff"), a dentist licensed to practice in Illinois, is an individual and resident of Cook County, Illinois, and a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4. Defendant, Cedars Business Services, LLC ("Cedar") is a debt collector headquartered in California, engaged as a "debt collector" as defined by and within the

meaning of the FDCPA, § 1692a, engaged in the business of collecting debts, including debts from consumers residing in Illinois, where it regularly collects or attempts to collect debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of delinquent consumer debts using the mails and telephone. Cedar recently registered as an LLC in Illinois (Exhibit A, Illinois LLC File Detail Report).

## FACTS COMMON TO ALL COUNTS

5. On or around April 10, 2007, Plaintiff entered into a loan agreement ("Consumer Loan Agreement" or "Agreement") with the National Bank of Kuwait, SAK ("NBK") where Plaintiff borrowed the amount of 15,000 Kuwaiti Dinars ("KD") for the purpose of purchasing a car for personal use ("Loan"). (Exhibit B, Consumer Loan Agreement).

6. At the time of the execution of the Loan, 15,000 KD was approximately $52,065.00 United States Dollars ("USD").

7. The interest rate on the Loan was 6.25%, and Plaintiff prepaid the interest on the Loan upon execution of the Loan, per the terms of the Agreement. (Exhibit B, Consumer Loan Agreement).

8. Due to circumstances beyond his control, Plaintiff was unable to make the scheduled payments on the Loan and the Loan thereafter went into default.

9. NBK thereafter filed a lawsuit in Kuwait, against the Plaintiff, to collect on the defaulted Loan, and a judgment was obtained against the Plaintiff for approximately 15,000 KD.

10. After the judgment was entered, NBK assigned the debt to Cedar for the purpose of collection from the Plaintiff, although NBK still retained ownership of the

Loan indebtedness. Cedar either received payment up front for its services in attempting to collect the Loan, or provided its services to NBK on a contingency basis.

11. On April 12, 2011, an agent or employee of Cedar who identified himself as Edward Evans ("Edward") placed a telephone call to Plaintiff for the purpose of collecting the alleged debt. Said call is thus a "communication" as that term is defined in 15 U.S.C. § 1692 a(2).

12. During the pendency of the April 12, 2011 telephone call, Edward told Plaintiff, *inter alia*, that NBK had a judgment against him for $103,795.00.

13. At no time prior to the filing of this Complaint did NBK have an enforceable judgment entered, against Plaintiff, for $103,795.00.

14. At no time prior to the filing of this Complaint did NBK have a judgment entered against the Plaintiff that was enforceable as a judgment in Illinois, or in any other State within the United States of America.

15. On or around April 14, 2011, Plaintiff received a letter from Cedar stating, in relevant part, that Plaintiff owes an "Amount Due" of $103,795.05 to NBK ("alleged debt"). (Exhibit C, Letter from Cedar dated April 12, 2011).

16. In fact, at the time the letter was sent, Plaintiff owed substantially less than $103, 795.05 to NBK, and Cedar and NBK thus knowingly attempted, through said letter, to collect an amount from Plaintiff that was neither authorized by the agreement creating the alleged debt, nor authorized by Illinois law.

17. On April 13, 2011, Plaintiff sent Cedar a letter requesting verification of the alleged debt, and disputing Cedar's claim as to Plaintiff's indebtedness on the alleged debt. (Exhibit D, Letter to Cedar dated April 13, 2011).

18. Cedar received Plaintiff's letter dated April 13, 2011 on April 15, 2011. (Exhibit E, Proof of Receipt from United States Postal Service).

19. Despite the fact that Cedar had not yet responded to Plaintiff's earlier-sent request for verification, Edward again placed a telephone call to Plaintiff at his dental practice, on May 1, 2011. Upon being connected to Plaintiff's secretary, Edward proceeded to inform her that he was calling to collect a debt from Plaintiff, and asked that Plaintiff call him back. Said call is thus a "communication" as that term is defined in 15 U.S.C. § 1692 a(2).

20. Plaintiff thereafter returned Edward's telephone call on May 1, 2011, and was connected to Edward. During the pendency of the telephone conference that ensued, Edward proceeded to tell the Plaintiff i) that Cedar had not received any letter from Plaintiff requesting verification, ii) that Cedar would proceed to garnish Plaintiff's wages, iii) that Cedar would put a lien on Plaintiff's home, and iv) that Cedar would take all of the money that was in Plaintiff's bank accounts. During the pendency of the call, Edward also recited Plaintiff's dental license number, and told Plaintiff that the next steps that he would take to collect the alleged debt would affect Plaintiff's dental license.

21. The Illinois Attorney Act provides, in relevant part, as follows:

**Sec. 1. No person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State.**

**No person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney, nor may an unlicensed person advertise or hold himself or herself out to provide legal services. § 705 ILCS 205/1. [License required]**

\*\*\*

22. Cedar is not permitted to practice law within this State as it does not have a license to do so as is required by § 705 ILCS 205/1. Cedar is thus neither authorized nor licensed to file documents to effect garnishment of Plaintiff's wages, nor place a lien on Plaintiff's home. Cedar's threats thus render it guilty of contempt of court under § 705 ILCS 205/1.

23. On or around May 17, 2011, Plaintiff received a letter and other documents ("verification documents") from Cedar which Cedar purported were responsive to Plaintiff's verification request sent on April 13, 2011. (Exhibit F, Letter from Cedar dated May 13, 2011, attached documents omitted).

24. The verification documents provided to Plaintiff on May 17, 2011 did not include a copy of the "Judgment" against the Plaintiff that Cedar asserted existed in the amount of $103,795.00. (Exhibit F, Letter from Cedar dated May 13, 2011, attached documents omitted).

25. At no time prior to the filing of this Complaint was the "Judgment" that was entered in Kuwait, against the Plaintiff, domesticated and converted to a state court judgment in any state located in the United States of America.

26. At no time prior to the filing of this Complaint was NBK's purported judgment against the Plaintiff, for the alleged debt, enforceable in Illinois. In fact, the judgment has been appealed by the Plaintiff to a Kuwaiti higher court, where it is now pending.

27. The Illinois Collection Agency Act provides, in relevant part, as follows:

**No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, *** exercise the right to**

**collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act." *225ILCS 425/4* (West 2008).**

28.     The Illinois Collection Agency Act further provides:

**A corporation acts as a collection agency when it "buys accounts, bills or other indebtedness [with recourse] and engages in collecting the same." *225 ILCS 425/3(d)*(West 2008). A party who acts as a collection agency without proper registration commits a Class A misdemeanor and must also pay a civil penalty. *225 ILCS 425/4.5*, *14*, *14b* (West 2008).**

29.     Cedar is not licensed as a debt collector in Illinois, and was not licensed as a debt collector in Illinois at any time relevant to the allegations herein.

30.     Cedar was not registered under the Act at the time it engaged in collection activity against Plaintiff; its actions in attempting to collect the alleged debt are thus criminal. (Exhibit A, Illinois LLC File Detail Report).

31.     Cedar's collection communications are to be interpreted under the "unsophisticated consumer" standard. <u>Gammon v. GC Services, Ltd. Partnership</u>, 27 F.3d 1254, 1257 (7th Cir. 1994).

## <u>COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-DEFENDANT CEDAR</u>

32.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

33.     Cedar's violations of the FDCPA include, but are not limited to:

    A.     Cedar violated § 1692c when it communicated to Plaintiff's secretary that Plaintiff owed an alleged debt, during the pendency of a telephone call on May 1, 2011;

    B.     Cedar violated § 1692d when it threatened Plaintiff with garnishment of his wages, threatened placement of a lien on Plaintiff's home, threatened to take "all" of the money in Plaintiff's accounts, and when it threatened to affect Plaintiff's dental license, as said actions oppress, harass, and abused the Plaintiff because

        Cedar could not legally pursue any of the aforementioned threats at the time they were communicated to Plaintiff;

C.     Cedar violated § 1692d(1) when it threatened Plaintiff with garnishment of his wages, threatened placement of a lien on Plaintiff's home, threatened to take "all" of the money in Plaintiff's accounts, and threatened to affect Plaintiff's dental license, as Cedar's attempts to collect the alleged debt via the means indicated above, without it being registered as a collection agency in Illinois as required by 225 ILCS 425/4, 14, 14b (West 2008), constitutes criminal means to harm Plaintiff's property;

D.     Cedar violated § 1692e by deceptively representing to Plaintiff that it was attempting to collect a valid and enforceable judgment entered against the Plaintiff, when in fact the judgment was not enforceable;

E.     Cedar violated § 1692d when it deceptively threatened Plaintiff with garnishment of his wages, threatened placement of a lien on Plaintiff's home, threatened to take "all" of the money in Plaintiff's accounts, and threatened to endanger Plaintiff's dental license if he didn't pay the alleged debt, as said threats falsely communicated that Cedar could legally pursue any and all of the aforementioned threats, when in fact none of the threatened actions could legally be made by Cedar;

F.     Cedar violated § 1692e(2) when it repeatedly, via both letter and telephone, misrepresented that Plaintiff owed an amount of $103,795.05 to NBK in order to collect the alleged debt from Plaintiff;

G.     Cedar violated § 1692e(2) when it misrepresented, via telephone, the legal status of the alleged debt by telling Plaintiff that NBK had an enforceable judgment against the Plaintiff when in fact it did not;

H.     Cedar violated § 1692e(3) when it misrepresented, via telephone, that it is authorized and licensed to file liens and effect garnishment of Plaintiff's wages to collect the alleged debt, and thus that it was authorized to practice law in Illinois;

I.     Cedar violated § 1692e(4) when it falsely told Plaintiff, during the pendency of a telephone call on May 1, 2011, that nonpayment of the alleged debt could result in seizure of his bank accounts, the placement of a lien on his home, and the garnishment of his wages;

J.       Cedar violated § 1692e(5) when it falsely threatened Plaintiff, during the pendency of a telephone call on May 1, 2011, that nonpayment of the alleged debt could result in seizure of his bank accounts, the placement of a lien on his home, and the garnishment of his wages, when none of the threatened actions could legally be taken by Cedar, and when none of the actions were intended to be taken by Cedar;

K.       Cedar violated § 1692e(5) when it falsely threatened Plaintiff, during the pendency of a telephone call on May 1, 2011, that nonpayment of the alleged debt of $103,795.05 would endanger his license to practice dentistry, as said threat cannot be legally taken nor was it intended to be taken by Cedar;

L.       Cedar violated § 1692e(9) when it falsely informed Plaintiff that it was attempting to collect an enforceable judgment against him in the amount of $103,795.05, as said judgment did not exist;

M.       Cedar violated § 1692e(10) when it falsely represented to the Plaintiff that it was attempting to collect an enforceable judgment against him in the amount of $103,795.05, as said judgment did not exist;

N.       Cedar violated § 1692f when it unfairly threatened Plaintiff with garnishment of his wages, threatened placement of a lien on Plaintiff's home, threatened to take "all" of the money in Plaintiff's accounts, and threatened to endanger Plaintiff's dental license if he did not pay the alleged debt, as said threats unfairly and falsely communicated that Cedar could legally pursue any and all of the aforementioned threats, when in fact none of the threatened actions could legally be taken by Cedar;

O.       Cedar violated § 1692f (1) when it attempted to collect, via letter and telephone call, an alleged debt from the Plaintiff that was not authorized by the Loan Agreement creating the debt, nor authorized by law;

P.       Cedar violated § 1692f (1) when it attempted to collect the alleged debt by unfairly communicating the existence of the alleged debt to Plaintiff's secretary on May 1, 2011, in order to shame Plaintiff into paying a debt he does not owe;

Q.       Cedar violated § 1692f (1) when it attempted to collect, via letter and telephone call, an alleged debt from the Plaintiff even though it was not registered as a collection agency in Illinois as required by 225 ILCS 425/4, 14, 14b (West 2008).

      R.      Cedar violated § 1692f (6) when it attempted to collect, via letter and telephone call, an alleged debt by threatening to file a lien on Plaintiff's home although Cedar had no present right or intention to do so;

      S.      Cedar violated § 1692g(b) when it continued to contact Plaintiff via telephone after it had received Plaintiff's request for verification, but before it had provided Plaintiff with verification of the alleged debt;

34. As the result of one or more of the actions taken by Cedar listed above, Plaintiff has suffered, *inter alia*, sleeplessness, nervousness, panic attacks, thoughts of death, and other effects, more specifically detailed in Plaintiff's Affidavit, a copy of which is attached hereto as Exhibit G.

35. As a result of one or more of Defendant's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorney fees.

## REQUEST FOR RELIEF-FDCPA

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the Defendants for the count alleged above for:

      A.      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

      B.      Actual damages;

      C.      Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

      D.      Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

                By:  <u>s/ Mario Kris Kasalo</u>
                     Mario Kris Kasalo

**The Law Office of M. Kris Kasalo, Ltd.**
"A Consumer Protection Law Firm"
1800 West Roscoe Street, Suite 409
Chicago, Illinois 60657
tele 312.450.7849
fax  312.698.5054